FILED

2014 Oct-22  AM 08:11
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| JASON and ELIZABETH LECOMPTE, as parents of BELL DIVINE LECOMPTE, a deceased minor, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>THE UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Civil Action No. 5:13-cv-0249-CLS |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Jason and Elizabeth LeCompte, commenced this action on February 5, 2103, asserting claims for negligence and wantonness against the United States of America for the death of their infant daughter, Bell Divine LeCompte, pursuant to the Federal Tort Claims Act of 1946, 28 U.S.C. § 2671 *et seq*.[1]  The case currently is before the court on defendant's motion for summary judgment.[2]  Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the motion is due to be denied.

## I. SUMMARY JUDGMENT STANDARD

---

[1] *See* doc. no. 1 (Complaint).

[2] Doc. no. 25.

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Inferences in favor of the non-moving party are not unqualified, however. "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983) (alteration supplied). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis and alteration supplied).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II. BACKGROUND

For purposes of summary judgment, the following background facts are undisputed.  Plaintiffs, Jason and Elizabeth LeCompte, were camping in a motor home with their six-month-old daughter, Bell Divine LeCompte, and other family members, in the Oak Grove Campground located at Sardis Lake in northern Mississippi on June 13, 2011.  The Oak Grove Campground is owned, managed, and operated by the United States Army Corps of Engineers ("The Corps").  During the afternoon hours, an oak tree fell onto the motor home, killing Bell Divine LeCompte.[3]

---

[3] *See* doc. no. 28 (plaintiffs' brief), at 16, Proposed Undisputed Fact Nos. 1 ("The Oak Grove Campground is a Class A Campground that is owned, managed and operated by the [Corps of Engineers] at Sardis Lake.") (alteration supplied), 3 ("On June 6, 2011, the plaintiffs, along with their six-month-old baby girl, Bell LeCompte, and various other family members, arrived at Sardis Lake and parked their motor home on the asphalt pad located at site 49 in the Oak Grove campground."), 5 ("On the afternoon of June 13, 2011, . . . a massive oak tree fell on the family's camper.").  *See also* doc. no. 30 (defendant's reply brief), at 4 (characterizing plaintiffs' proposed facts 1-5 as "mostly background facts that are incomplete and thus irrelevant to the issues raised in Defendant's motion," but not disputing any of those facts).

Even though the events leading to this lawsuit occurred in Mississippi, the case was filed in the Northern District of Alabama because both plaintiffs reside within that district.  *See* 28 U.S.C. § 1391(e)(1) ("A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of

Jason and Elizabeth LeCompte seek to hold the United States liable for their daughter's death based on the Corps' alleged negligence and wantonness in maintaining the campground.[4]

---

the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which . . . (C) the plaintiff resides if no real property is involved in the action."); *see also* doc. no. 1 (Complaint) ¶ 5 ("**JASON LECOMPTE** is a . . . resident citizen of Trinity, in Morgan County, Alabama.") (emphasis in original), ¶ 6 ("**ELIZABETH LECOMPTE** is a . . . resident citizen of Trinity, in Morgan County, Alabama.") (emphasis in original).

[4] Specifically, plaintiffs assert that The Corps was negligent and/or wanton when it:

(A)   Failed to remove the rotten tree from Campsite No. G-49, although the U.S. Army Corps of Engineers knew, or in the exercise of reasonable care should have known, that this tree was likely to fall without warning at any time;

(B)   Failed to remove the rotten tree from Campsite No. G-49, when the U.S. Army Corps of Engineers knew, or in the exercise of reasonable care should have known, that this tree, if it were to fall, would fall onto the only designated parking area in Campsite No. G-49;

(C)   Permitted the Plaintiffs to be assigned to Campsite No. G-40, when the U.S. Army Corps of Engineers knew, or in the reasonable care should have known, that Campsite No. G-49 was dangerous and unfit for occupancy while the rotten tree remained standing;

(D)   Failed to warn the Plaintiffs of the danger presented by the rotten tree in or near Campsite No. G-49;

(E)   Failed to close Campsite No. G-49 until it no longer contained the dangerous condition created by the tree; . . .

(F)   Failed to make Campsite G-49 reasonably safe for its intended use[;]

(G)   Failed to identify the hazards of the decaying tree[;]

(H)   Failed to gather information about the hazardous trees under its control[;]

(I)   Failed to follow policies designed to identify and remove hazardous trees[;]

(J)   Failed to hear or acknowledge warnings regarding the hazardous trees[;]

### III. DISCUSSION

The United States makes three arguments in support of its motion for summary judgment. First, the government contends that plaintiffs' claims are barred by the discretionary function exception to the Federal Tort Claims Act. Second, the government argues that none of its employees breached any duties owed to plaintiffs. Third, the government asserts that plaintiffs' claims are barred by the Act of God defense. *See Eli Investments, LLC v. Silver Slipper Casino Venture, LLC*, 118 So.3d 151, 156 (Miss. 2013) ("The Act of God defense is an affirmative defense to the element of causation. 'No one is liable for an injury proximately caused by an act of God[.]' . . . . An Act of God is an injury due exclusively to forces of nature, without human intervention, which could not have been prevented by the use of due care and reasonable foresight.") (citations omitted) (alteration in original).[5]

---

     (K)    Neglected or refused to receive warnings or information concerning hazardous decaying trees.

Complaint ¶¶ 25, 31 (redaction and alterations supplied).

   [5] The United States' liability under the Federal Tort Claims Act is determined by applying the laws of the state where the alleged injury occurred. *See* 28 U.S.C. § 1346(b)(1) ("Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred*."). Because plaintiffs' alleged injuries occurred in Mississippi, Mississippi

Upon a careful review of the entire file, the court readily concludes that there are genuine issues of material fact with regard to whether the United States breached a duty of care to plaintiffs, and whether plaintiffs' injuries were caused *exclusively* by forces of nature. The legal issue of whether the discretionary function exception applies will require more detailed discussion.

The Federal Tort Claims Act constitutes a limited waiver of the United States' sovereign immunity, allowing

> civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The Act incorporates certain statutory exceptions, including the so-called "discretionary function exception." Pursuant to that exception, the Act will *not* apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be

law applies.

abused.

28 U.S.C. § 2680(a).  The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

The Eleventh Circuit follows a two-part test to determine whether the discretionary function exception applies.

> We consider first whether the conduct involves "'an element of judgment or choice,'" *OSI, Inc*.[ *v. United States*], 285 F.3d [947,] 950[ (11th Cir. 2002)] (quoting [*United States v.* ]*Gaubert*, 499 U.S. [315,] 322, 111 S. Ct. [1267,] 1273[ (1991)]), which will be the case unless "'a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard.'" *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997) (quoting *Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993)).  The conduct need not be "confined to the policy or planning level." *Gaubert*, 499 U.S. at 325, 111 S. Ct. at 1275.
>
> We then ask whether the judgment or choice is grounded in considerations of public policy, because the "purpose of the [discretionary function] exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id*. at 322-23, 111 S. Ct. at 1273-74 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S. Ct. 2755, 2765, 81 L. Ed. 2d 660 (1984)). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a [g]overnment agent to

exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. at 324, 111 S. Ct. at 1274. Our inquiry does not focus either on the subjective intent of the government agent, *id*. at 325, 111 S. Ct. at 1275, or on whether the agent actually weighed policy considerations, *OSI, Inc*., 285 F.3d at 950-51, but "on the nature of the actions taken and on whether they are susceptible to policy analysis," *Gaubert*, 499 U.S. at 325, 111 S. Ct. at 1275. To succeed, the [plaintiff] must establish "that the challenged actions are not the kind of [discretionary] conduct that can be said to be grounded in the policy of the regulatory regime." *Id*. Such conduct includes, for example, "dr[iving] an automobile on a mission connected with . . . official duties." *Id*. at 325 n. 7, 111 S. Ct. at 1275 n. 7.

*Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006) (alteration to case cites and third textual alteration supplied, other alterations in original).

Defendant asserts that all of the actions it took in maintaining the Oak Grove Campground were discretionary, because there were no violations of mandatory regulations or policies pursuant to which it lacked judgment or choice. *See Autrey*, 992 F.2d at 1526 ("We must first determine whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice.") (citing *Gaubert*, 499 U.S. 315, 322). Stated affirmatively, the United States asserts that it always possessed judgment or choice, and that all applicable regulations and policies were permissive and discretionary. The evidence does not support that argument. For example, the Corps' "Public Use Area Safety" policy states:

All buildings, grounds and facilities are inspected on a daily basis by roving ranger patrol *and monthly through a critical parts inspection*. These inspections are for the purpose of locating any hazards that may pose a threat to life or property.  Items to inspect that may constitute a safety hazard are:  *dead or fallen trees*, broken fixtures or jagged edges in restroom facilities, pot holes or unsafe road conditions, assuring that signs, guardrails and fences that could result in injury [*sic*], check electrical boxes for exposed or frayed wiring, any dangerous conditions are reported to the assistant manager and corrective actions are immediately taken.[6]

The Corps employees at Sardis Lake actually added to that Safety policy by requiring that "Critical Parts Inspections," or "Critical Parts Inventories," be conducted *twice* each month during the "recreation season," which lasted from March 1 to October 31 of each year.[7]  Each Park Ranger was responsible for conducting "Critical Parts Inspections" in one or more assigned recreation areas at Sardis Lake.[8] The "Critical Parts Inventory" required a detailed inspection of up to 31 elements of the assigned recreation area.[9]   The instructions for completing Critical Parts

---

[6] Plaintiffs' evidentiary submission, Tab E, at LeCompte_021009 (Public Use Area Safety) (alteration and emphasis supplied).

[7] *Id.* at LeCompte_022636 (Ranger SOP) ("During the recreation season, Critical Parts are due to George Harris on the 15th and 30th of each month. . . .  During the non-recreation season, Critical Parts are due to George Harris no later than the 15th of each month.").  *See also id.* at LeCompte_13493 (Critical Parts Inspections) ("Assigned Inspector will conduct inspections according to frequency chart.  Note any deficiency on inspection form and turn in to Area Ranger."); *id.* at LeCompte_v_US_011664 (Critical Parts Frequency chart) (stating that Critical Parts Inventories should be conducted bi-monthly between March 1 and October 31, and monthly between November 1 and February 28).

[8] *See id.* at LeCompte_13493 (Critical Parts Inspections assignment chart).

[9] *See id.* at LeCompte_v_US_011743 (Critical Parts Reporting Sheet) (listing all of the items to be inspected, including, when applicable, roads, parking lots, lights, circuit breaker box, trash cans, picnic tables, grills, fire rings, service tables, lantern hangers, outdoor showers, water

-9-

Inspections specifically state that, when inspecting "grounds," a Ranger should look at "trees," with the following instructions: "Limbs should be trimmed to no less than 7 1/2' from the ground.  Dead limbs/trees should be removed."[10]

There is evidence that the Corps did not follow this policy.  Prior to June 13, 2011, the date on which plaintiffs' daughter was killed, no Critical Parts Inspections had been performed for the Oak Grove Campground area since August 29, 2010, at the latest.[11]  Defendant does not dispute the Rangers' failure to conduct formal Critical Parts Inspections during this time period.  Instead, defendant asserts that the failure to conduct the formal inspections is irrelevant, because Rangers "in fact inspected the Oak Grove campground daily, especially in the summertime, for any

hydrant/fountain, fences, walkways, playground equipment, beaches, signs, bulletin boards, park benches/swings, barricades, boat ramps, comfort stations (restrooms), fee booths, fish cleaning stations, picnic shelters, trails, amphitheater, fishing tournament facilities, basketball courts, sewage treatment plants, and paved camping pads).

[10] *Id.* at LeCompte_v_US_011665.

[11] *See* plaintiffs' evidentiary submission, at Exhibit O (Critical Parts Inspection forms for Oak Grove); *see also* defendant's evidentiary submission, Tab 7 (Deposition of Kyle Donlevy), at 17-22. Although this is how plaintiffs characterize the evidence in their brief, this statement actually construes the evidence in the light most favorable *to defendant*.  The last formal Critical Parts Inspection form for the Oak Grove Campground was submitted on March 13, 2010, more than five months earlier than the date stated by plaintiffs. *Id.* at LeCompte_13472-LeCompte_13473.  Kyle Donlevy, the Ranger in charge of inspecting the Oak Grove area, then sent an e-mail to his supervisor, Robert Staten, on August 29, 2010, with the subject line "Critical Parts."  Donlevy stated that, at Oak Grove, "Several dead trees need to be cut, they have been marked already though just thought it might be a good idea to try and get them cut before Labor Day." *Id.* at LeCompte_13455. The court is considering that August 29, 2010 e-mail as the last Critical Parts Inspection form submitted prior to the June 13, 2011 incident, even though such a characterization is charitable.  In any event, it is undisputed that the Critical Parts Inspection forms had not been submitted for at least ten months before June 13, 2011 — a considerable amount of time.

-10-

hazards that its employees on the ground could recognize."[12]  However, those daily inspections, or "Ranger Logs," were more casual and less detailed than the formal Critical Parts Inspections.[13]  Thus, as plaintiff asserts,

> while it is undisputed that park rangers were likely in the Oak Grove campground on a daily basis and had the opportunity to note any hazards that they may have observed while performing their daily patrol, the rangers' mere presence in the campground does not constitute a proper critical parts inspection, as the critical parts inspection is part of the COE safety program, which requires a more thorough and in depth inspection than that which is performed during a ranger's daily patrol.[14]

At the very least, there are genuine issues of material fact with regard to whether the Critical Parts Inspection policy was mandatory or discretionary, and whether defendant followed that policy at the Oak Grove campground.  Thus, this court cannot find, as a matter of law, that the discretionary function exception to the United States' waiver of sovereign immunity applies, and summary judgment cannot be granted in the United States' favor.

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, defendant's motion for summary judgment is DENIED.  This case will be set for pretrial conference and trial by separate order.

---

[12] Doc. no. 30 (defendant's reply brief), at 8.

[13] Defendant's evidentiary submission, Tab 3 (Deposition of Alton Pollan), at 67-71, 270-73.

[14] Doc. no. 28 (plaintiffs' response brief), at 24.

DONE this 21st day of October, 2014.

_____
United States District Judge